IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HOLLY FISCHER,<br><br>        Plaintiff,<br>v.<br><br>ERICA PREUITT, JAY SCROGGIN, PATTY BLANCHARD, BRIAN VALETSKI, TRAVIS GRAVES, SALLY LAJOIE, and MULTNOMAH COUNTY,<br><br>        Defendants. | Case No.: 3:23-cv-01250-AN<br><br>OPINION AND ORDER |

        Plaintiff Holly Fischer brings this action against defendants Erica Preuitt ("Preuitt"), Jay Scroggin ("Scroggin"), Patty Blanchard ("Blanchard"), Brian Valetski ("Valetski"), Travis Graves ("Graves"), Sally LaJoie ("LaJoie"), and Multnomah County (the "County") (collectively, "defendants"), alleging retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, retaliation in violation of Oregon Revised Statute ("ORS") § 659A.030, disability discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, disability discrimination in violation of ORS § 659A.112, retaliation in violation of the ADA, retaliation in violation of ORS § 659A.109, and violation of the First Amendment under 42 U.S.C. § 1983. On March 5, 2024, defendants moved to dismiss plaintiff's claims for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Oral argument was held on July 31, 2024. For the following reasons, defendants' motion is DENIED in part and GRANTED in part.

## LEGAL STANDARD

        A motion to dismiss for failure to state a claim is appropriate when the allegations within a complaint do not "state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The

1

plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). While the court must draw all reasonable inferences from the factual allegations in favor of the plaintiff, *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008), the court need not credit legal conclusions that are couched as factual allegations, *Iqbal*, 556 U.S. at 678-79.

## BACKGROUND

Plaintiff is a former employee of the Multnomah County Department of Community Justice ("DCJ"). Second Am. Compl. ("2d Compl."), ECF [14], ¶ 5. During the time that the allegations took place, Preuitt was the DCJ director, Scroggin was the ASD Division Director, Blanchard was the DCJ Human Resources Manager, Valetski was the Community Justice Manager, Graves was the Deputy Chief Operating Officer, and LaJoie was the Human Resources Manager. *Id.* ¶¶ 6-11.

Plaintiff began working for DCJ in 2015 as a full-time probation/parole officer. *Id.* ¶ 13. Plaintiff consistently performed her job duties well and received higher than satisfactory ratings on performance evaluations. *Id.* Plaintiff was never disciplined during her employment. *Id.*

In March 2017, plaintiff was sexually assaulted by a coworker ("Novinger") who is not a party in this case. *Id.* ¶ 14. At that time, plaintiff was in a romantic relationship with Novinger. *Id.* Throughout the duration of their eight-month relationship, Novinger was mentally and emotionally abusive to plaintiff. *Id.* Plaintiff told numerous fellow officers about the sexual assault immediately after the event and throughout January of 2018. *Id.* ¶ 15. In January of 2018, one of plaintiff's fellow officers reported the sexual assault to Preuitt. *Id.* Novinger was permitted to continue working in close proximity with

plaintiff. *Id.* ¶ 16. When plaintiff repeatedly asked for Novinger to be removed from her floor, DCJ refused to remove him unless plaintiff filed a police report. *Id.*

In late March of 2018, plaintiff reported the sexual assault to the police, and Novinger was removed from her floor after plaintiff ran directly into him at work the day that Novinger learned he was under investigation for felony sodomy. *Id.* ¶ 17. Plaintiff suffered an emotional breakdown, and Novinger was placed on administrative leave during the ensuing criminal and internal investigations. *Id.*

During the pendency of the investigation, plaintiff was vocal about her displeasure with how the investigation was conducted. *Id.* ¶ 20. She asked Blanchard to give her notice when Novinger would be notified of the criminal investigations, which Blanchard failed to do. *Id.* This resulted in a frightening encounter for plaintiff at work with Novinger, and Novinger was permitted to continue carrying a firearm during the course of his duties. *Id.* Plaintiff also asked to be notified where Novinger had been moved, but Valetski refused to provide plaintiff with this information. *Id.* ¶ 21.

During the investigation, county management ignored plaintiff's requests that it intervene in her coworkers' gossip and allegations that she suffered from a mental defect. *Id.* ¶ 22. Certain staff members expressed their fear of plaintiff to managers, including allegations that plaintiff was dangerous and mentally unsound. *Id.* Further, one coworker began carrying his firearm because of rumors about plaintiff. *Id.* This behavior caused her isolation from staff members. *Id.*

On November 15, 2018, a county attorney informed plaintiff that she would be called as a witness in Novinger's arbitration hearing and that the county's internal investigation (which had ended in August 2018) concluded that plaintiff's claims were unfounded. *Id.* ¶ 23. That same day, plaintiff attended a required firearms qualification training where she made two gun-handling mistakes and was dismissed from the training. *Id.* ¶ 24. Although plaintiff was advised that she could return the following week to conduct the drill again, Scroggin, contrary to usual protocol, grounded plaintiff's firearm pending a fitness for duty evaluation in January of 2019. *Id.* ¶¶ 24-25. After DCJ contracted a physician for the evaluation, DCJ forwarded the physician ninety pages of email communications and allegations of misconduct made against plaintiff without plaintiff's prior knowledge. *Id.* ¶ 25. Plaintiff asked Blanchard several times if

3

she was under investigation and was told no. *Id.* Plaintiff was advised by both the County and the evaluating physician that the evaluation was for "arming purposes only"; however, the physician concluded that plaintiff was unfit to perform the duties of a parole/probation officer ever again. *Id.*

On March 21, 2019, Blanchard met with plaintiff and her union representative to advise plaintiff that she had failed the fitness evaluation. *Id.* ¶ 27. Blanchard provided plaintiff with two options: (1) use the rest of her vacation and sick time or (2) take a demotion in lieu of termination. *Id.* Blanchard advised plaintiff that she could take another evaluation in six months and, if she was determined to be "fit" for duty, she would be returned to her position. *Id.* Blanchard informed plaintiff that the County was treating the situation as if plaintiff had requested an accommodation for a mental disability under the ADA. *Id.* Plaintiff asserted she did not have a disability, that she could perform her job without accommodations, and that she viewed the DCJ's actions as punitive. *Id.*

Upon returning to work near the end of March 2019, plaintiff was placed in the role of office assistant at the DCJ juvenile division where she performed tasks below her level of competence. *Id.* ¶ 28. Plaintiff subsequently took the role of Human Services Investigator in the Marion County Department of Human Services to avoid unemployment. *Id.* This position paid $5 less per hour and removed her from collecting police/fire retirement benefits. *Id.* Preuitt, Blanchard, Valetski, and Scroggin had input in the demotion decision. *Id.* At an unspecified time, plaintiff filed a grievance complaining that the decision to accept the demotion was made under duress and that she did not need an accommodation to perform her job duties as a probation/parole officer. *Id.* ¶ 29.

In April of 2019, plaintiff testified at Novinger's arbitration hearing. *Id.* ¶ 27. In September of 2019, Novinger was terminated for lying repeatedly during the criminal and internal investigation processes. *Id.* ¶ 18.

In December of 2019, plaintiff scheduled a second fitness evaluation with an expert police psychologist that she selected and compensated. *Id.* ¶ 30. The psychologist concluded that plaintiff's communications with the DCJ during the assault investigation were consistent with an individual processing a traumatic event and that the physician who conducted the first evaluation had assumed the assault had not

occurred. *Id.* The psychologist also stated that any mental disability that plaintiff may have had was temporary, and she was fit for duty in the role of a probation/parole officer. *Id.* However, the DCJ refused to reinstate plaintiff back to her former position. *Id.* ¶ 31.

In January of 2020, plaintiff applied for and was offered a promotion to the position of deputy public guardian. *Id.* ¶ 32.

After an arbitration hearing in March 2020 where Novinger was deemed not credible, he was returned to his position based on his argument that he had not sexually assaulted plaintiff during the course of his work duties, and the punishment for his deception did not rise to the level of termination. *Id.* ¶ 19. Novinger was reinstated to his position in September of 2020 after the union filed a claim on his behalf. *Id.*

On July 20, 2020, plaintiff filed a complaint with the Bureau of Labor and Industries ("BOLI") alleging disability discrimination and retaliation for raising concerns about sexual harassment. *Id.* ¶ 33. In July of 2020,[1] plaintiff and the DCJ reached an agreement that the DCJ would offer plaintiff her job back upon successful completion of a "tie-breaking" fitness evaluation. *Id.* ¶ 34. The parties agreed upon a physician in the spring of 2021. *Id.*

On September 1, 2021, plaintiff was out of state when she received the results of the third fitness evaluation. *Id.* ¶ 35. The physician, like the psychologist from the second evaluation, concluded that plaintiff was fit to return to her position as a probation/parole officer and suggested that plaintiff should remain away from Novinger. *Id.* ¶ 34. Plaintiff sent a letter to her supervisor resigning from the deputy public guardian position and told her supervisor that she needed to be in Minnesota to handle a family matter. *Id.* ¶ 35. Plaintiff also informed her union representative that she planned to return to the role of probation/parole officer, and the union representative advised the DCJ accordingly. *Id.*

In mid-September of 2021, plaintiff learned that the DCJ was refusing to return her to the probation/parole officer job, stating instead that plaintiff had resigned from the County when she resigned

---

[1] It is unclear from the complaint if this occurred before, or after, the BOLI complaint.

from the deputy public guardian position. *Id.* ¶ 36. At an unspecified time, plaintiff's union representative filed an internal complaint alleging the DCJ had demonstrated a pattern of discrimination against plaintiff on the basis of its perception that plaintiff had a mental illness. *Id.* ¶ 37.

When informed of plaintiff's resignation from her job as deputy public guardian, Graves sent an internal county message that stated, "That's a good thing, isn't it?" *Id.* ¶ 38. When LaJoie learned that plaintiff had passed the third fitness evaluation, she wrote in an internal message, "Weird. I thought that was a typo." *Id.*

At the end of December 2021, plaintiff's union negotiated plaintiff's return to her probation/parole officer position. *Id.* ¶ 39. Initially, DCJ attempted to assign plaintiff to a position working in the same building as Novinger. *Id.* Plaintiff refused to return unless she would never be forced to work in the same location as Novinger. *Id.* DCJ agreed to this stipulation and, in April of 2022, a safety plan stating that plaintiff and Novinger were not allowed to work in the same building went into effect. *Id.* ¶¶ 39-40.

Since returning to her position as a probation/parole officer in December 2021, plaintiff has continued to experience exclusion and isolation, unfounded oral reprimands, a letter of expectations, failure to resolve complaints, criticism regarding her non-verbal mannerisms, and negative gossip. *Id.* ¶ 41. Plaintiff alleges these experiences result from the behavior of Preuitt, Scroggin, Blanchard, Valetski, Graves, and/or LaJoie. *Id.*

On July 26, 2022, plaintiff filed a second complaint with BOLI. *Id.* ¶ 12. BOLI provided plaintiff with a right to sue notice on May 29, 2023. *Id.* On August 28, 2023, plaintiff filed the present lawsuit.

## DISCUSSION

Defendants move to dismiss on both procedural and substantive grounds. These bases are addressed in turn.

**A.     Procedural Bases for Dismissal**

    1.     *Claim Processing Rule*

Defendants argue that plaintiff's federal claims should be dismissed for failure to comply with the mandatory claim processing rule. Prior to filing a Title VII claim or a claim under the ADA, the complainant must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(b), (e)(1). When a complaint concerns a practice occurring in a state or political subdivision that has its own employment agency empowered to "grant or seek relief," Title VII instructs complainants to file their charge first with the state or local agency. *Id.* § 2000e-5(c). The complainant then has 300 days following the challenged practice, or thirty days after receiving notice that the state or local proceedings have ended (whichever is earlier), to file a charge with the EEOC. *Id.* § 2000e-5(e)(1). However, if a state or local agency has a "work-sharing agreement" with the EEOC, a complainant need not file separately because filing with either agency will result in that agency relaying the charge to the other. 29 C.F.R. § 1601.13.

Plaintiff's complaint alleges that she filed a BOLI complaint on July 26, 2022, and that this filing constitutes a "joint filing with the [ ] [EEOC]." 2d Compl. ¶ 12. Defendants argue that this is insufficient to comply with the mandatory claims processing rule because plaintiff has not identified an EEOC complaint number or alleged that she received a right to sue letter from the EEOC. Further, defendants note that plaintiff does not allege that she filed her lawsuit within ninety days of receiving an EEOC right-to-sue letter. In the absence of an EEOC right-to-sue letter, defendants argue that the Court would need to assume that the matter was co-filed with the EEOC, that the EEOC opened a claim, and that the EEOC issued a right-to-sue letter. In defendants' view, these assumptions are an inappropriate basis for finding that plaintiff has complied with the claim processing rule.

Plaintiff has proffered evidence that her 2022 BOLI complaint specifically asked that the complaint be cross-filed with the EEOC but requested that BOLI handle the investigation. Decl. of Elizabeth Farrell, ECF [25], Ex. 1. However, plaintiff concedes that she did not receive a right-to-sue letter from the EEOC. Nonetheless, plaintiff argues that she has still complied with the claim processing rule because her lawsuit was filed within ninety days of BOLI's right to sue letter, and BOLI and the EEOC have a work-sharing agreement.

7

Plaintiff has not proffered substantiating evidence of a work-sharing agreement between BOLI and the EEOC, however defendants conceded at oral argument that such an agreement does exist. When the EEOC has a work-sharing agreement with a state agency, "[t]he EEOC's failure to issue a right-to-sue letter on a dual-filed charge is no bar to a suit" under the ADA or Title VII. *Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1245 (9th Cir. 2010).

In *Stiefel*, the plaintiff had filed a disability discrimination complaint with a state agency that had a work-sharing agreement with the EEOC but did not similarly file a complaint with the EEOC. Nevertheless, the Ninth Circuit concluded that "when a plaintiff files a disability discrimination complaint with a state agency acting . . . as an agent of the EEOC, and receives a right-to-sue letter from the state agency," the plaintiff "thereby becom[es] entitled to an EEOC right-to-sue letter, [and] need not file a separate complaint with the EEOC nor receive an EEOC right-to-sue letter in order to file suit." *Id.*

Similarly, in *Surrell v. California Water Service Co.*, 518 F.3d 1097 (9th Cir. 2008), the plaintiff filed a complaint with a state agency that had a work-sharing agreement with the EEOC but did not contemporaneously file a complaint with the EEOC. Again, the Ninth Circuit concluded that where "a plaintiff is entitled to receive a right-to-sue letter from the EEOC, a plaintiff may proceed absent such a letter, provided she has received a right-to-sue letter from the appropriate state agency." *Id.* at 1105.

Because defendants do not dispute that BOLI and the EEOC have a work-sharing agreement, plaintiff need not allege that she obtained an EEOC right-to-sue letter to comply with the mandatory claim processing rule. It is sufficient that plaintiff alleges that she received a BOLI right-to-sue letter and filed this action within ninety days of receiving the letter.

2. *Statute of Limitations*

Defendants also argue that some of plaintiff's alleged injuries fall outside the applicable statute of limitations and thus cannot be the basis of plaintiff's claims. Plaintiff appears to concede that some of the alleged injuries are outside of the statute of limitations, but states that those allegations are included as "contextual information." Regardless, plaintiff emphasizes that numerous allegations involve

harm that occurred within the statute of limitations. For ease of reference, the Court identifies the relevant statutes of limitations for plaintiff's claims.

For plaintiff's state law claims, the Oregon Tort Claims Act ("OTCA") dictates the relevant time frames. Under the OTCA, a plaintiff cannot maintain a tort action against a public body, its officers, its employees, or its agents unless they provide sufficient "notice of claim . . . within 180 days after the alleged loss or injury." Or. Rev. Stat. § 30.275(2)(b). The notice period begins to run when the "plaintiff has a reasonable opportunity to discover his injury and the identity of the party responsible for that injury." *Adams v. Or. State Police*, 289 Or. 233, 239, 611 P.2d 1153 (1980). Notice may be provided though a formal notice, actual notice, or commencement of an action on the claim. Or. Rev. Stat. § 30.275(3)(a)-(c). Thus, for plaintiff's state law claims, only alleged losses or injuries that occurred within 180 days prior to plaintiff's notice of claim are actionable.

Plaintiff sent defendants a Tort Claim Notice on February 16, 2022. 2d Compl. ¶ 4. This constitutes formal notice, and any alleged injuries or losses that occurred during the 180 days prior to February 16, 2022 may be a basis for plaintiff's state law claims. Plaintiff's filing of this case on August 28, 2023 also constitutes notice under the OTCA. Thus, any alleged injuries or losses that occurred during the 180 days prior to August 28, 2023 may also be a basis for plaintiff's state law claims. BOLI complaints does not constitute notice. *See Lucke v. Multnomah Cnty.*, No. CV-06-1149-ST, 2008 WL 4372882, at *22 (D. Or. Sept. 22, 2008). Thus, plaintiff's state law claims may be based on alleged injuries or losses that occurred between August 20, 2021 and February 16, 2022, and between March 1, 2023 and August 28, 2023.

For plaintiff's federal claims, only alleged injuries or losses that occurred within the 300 days prior to the plaintiff's BOLI complaint are actionable. 42 U.S.C. § 2000e-5(e)(1) (permitting claimant to file charge with EEOC within 300 days of unlawful employment practice if claimant first files with a state agency); *EEOC v. Fred Meyer Stores, Inc.*, 954 F. Supp. 2d 1104, 1113 (D. Or. 2013) (noting that in jurisdictions where state agency has a work-sharing agreement with the EEOC, claimant must file discrimination claim with state agency or the EEOC within 300 days of alleged unlawful practice). Plaintiff

filed her second BOLI complaint on July 26, 2022. Thus, only alleged injuries or losses that occurred between September 29, 2021 and July 26, 2022 may be a basis for plaintiff's federal claims.[2]

In sum, plaintiff may not recover on her state law claims for any alleged injury or loss that occurred outside of August 20, 2021 to February 16, 2022 or March 1, 2023 to August 28, 2023. Further, she may not recover on her federal law claims for any alleged injury or loss that occurred outside of September 29, 2021 to July 26, 2022.

**B.    Substantive Bases for Dismissal**

1. *Counts One and Two (Retaliation)*

Plaintiff's first claim for relief under Title VII and her second claim for relief under ORS § 659A.030(1)(a) and (b) rely on the same underlying factual allegations and are analyzed together. *Lindsey v. Clatskanie People's Utility Dist.*, 140 F. Supp. 3d 1077, 1086 (D. Or. 2015) (considering Title VII and ORS § 659A.030 retaliation claims together because "[t]he substantive analysis . . . is substantially similar"). Title VII prohibits employers from discriminating against an employee after that employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To make out a prima facie case of retaliation, an employee must show that (1) they engaged in protected activity; (2) they suffered an adverse employment action; and (3) a causal connection link exists between the activity and the employment action. *Brooks v. City of Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

a.    Protected Activity

The complaint alleges that plaintiff was retaliated against "for reporting sexual assault and a sexually hostile work environment." 2d Compl. ¶¶ 48. In the retaliation context, protected activity includes the filing of a charge, filing of a complaint, or providing testimony on an employer's alleged

---

[2] Defendants assert that plaintiff's BOLI complaint was filed on August 22, 2021, thus making the time period June 14, 2021 to August 22, 2021. It is unclear how defendants came to this conclusion—the complaint states, "Plaintiff filed a complaint with [BOLI] on or around July 26, 2022." 2d Compl. ¶ 12.

unlawful practices. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003). Reports by employees to their employer of unlawful employment practices may, in some circumstances, constitute protected activity. *See E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983). Defendants argue that reporting the sexual assault was not opposition to an unlawful employment practice because the assault did not occur in the workplace or at a work-related event coordinated by her employer, and the assault was perpetrated by a coworker, not plaintiff's employer, supervisor, or manager. Further, defendants argue that plaintiff's allegation that defendants created "a sexually hostile work environment" is conclusory.

Plaintiff argues that reporting the sexual assault and sexually hostile work environment was protected activity because they were reports of sexual harassment. Sexual harassment, as a form of sex discrimination, is prohibited by Title VII. 42 U.S.C. § 2000e-2(a)(1); 29 C.F.R. § 1604.11(1)(a); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002). However, for an employee's statement to be "opposed to an unlawful employment practice," it must refer to "*some* practice by the employer that is allegedly unlawful." *Crown Zellerbach Corp.*, 720 F.2d at 1013. The practice need not be "demonstrably unlawful; opposition clause protection will be accorded whenever the opposition is based on a 'reasonable belief' that the employer has engaged in an unlawful employment practice." *Id.*

Putting aside the fact that plaintiff does not allege that she, herself, reported the sexual assault to her employer,[3] plaintiff has not alleged that she opposed an unlawful employment practice by reporting the sexual assault. To constitute protected activity, "the opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Silver v. KCA, Inc.*, 586 F.22d 138, 141 (9th Cir. 1978). Although an employer may be responsible for the discriminatory acts of its supervisors, plaintiff does not allege that Novinger was in a supervisory role. Similarly, an employer may commit an unlawful employment practice for failing to prevent or remedy sexual harassment among coworkers when it knew, or in the exercise of reasonable care should have known,

---

[3] Instead, plaintiff alleges that one of her coworkers reported the assault to Preuitt.

11

of the harassment, *Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991), but plaintiff has not alleged that her employer failed to prevent the assault. Put simply, plaintiff alleges that the sexual assault occurred outside of the workplace by a coworker who was not in a supervisory role, but she makes no allegations suggesting that the assault shared any nexus with her employment relationship with her employer. Although the opposed practice need not be demonstrably unlawful, plaintiff must allege at least a reasonable belief that the practice was unlawful. Here, plaintiff has not alleged a reasonable belief that an assault by a coworker without supervisory authority that occurred outside of the workplace, unconnected to any aspect of the working relationship, would constitute an unlawful employment practice.

However, plaintiff has alleged protected activity in relation to reporting a hostile work environment. A hostile work environment may be present when the "workplace is permeated with discriminatory intimidation . . . that is sufficiently severe or pervasive to alter the conditions of [ ] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Plaintiff alleges that she "expressed her fear of Novinger on multiple occasions" to "various managers," that she asked Blanchard to notify her when Novinger was "notified of the criminal investigations," that she asked to be notified where Novinger was moved so she could avoid the location, that she asked management to intervene in "her coworkers' gossip and allegations of mental defect," and that she "suffered an emotional breakdown" after running into Novinger on the day that he learned he was under investigation. 2d Compl. ¶¶ 17, 20-22. Further, after plaintiff was told she would be demoted, she informed DCJ that "she viewed [its] actions as punitive." *Id.* ¶ 27. This sufficiently alleges that plaintiff reasonably believed that she was being subjected to a hostile work environment, and that she reported that environment to her employer.

      b.    Causation

Causation may be inferred from circumstantial evidence, "such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011). Defendants argue that plaintiff has not alleged causation because the earliest timely alleged adverse action occurred in mid-September of

2021, approximately forty-two months after plaintiff initially reported the assault. As discussed, reporting the assault was not protected activity, but plaintiff's report of a hostile work environment sufficiently alleges protected activity. Based on the complaint, plaintiff appears to allege that the following conduct were timely adverse employment actions: (1) DCJ's refusal to return plaintiff to a probation/parole officer position in September of 2021; (2) DCJ's initial effort to place plaintiff in the same building as Novinger in December of 2021; and (3) the exclusion, isolation, unfounded oral reprimands, letter of expectations, failure to resolve complaints, criticism regarding plaintiff's non-verbal mannerisms, and negative gossip from December 2021 onward.

The complaint is not entirely clear as to the dates that plaintiff reported a hostile work environment. However, hostile work environment claims often "involve[ ] repeated conduct," so it is not entirely implausible that plaintiff could have reported a hostile work environment on more than one occasion. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Nonetheless, in the absence of specific complaint allegations, the Court cannot say with any certainty whether the time between such reports and the alleged adverse actions is sufficient to allege causation. Without specific allegations as to when plaintiff made reports of a hostile work environment, plaintiff cannot assert a plausible basis for causation. Thus, plaintiff has not pled a plausible claim for relief on her retaliation claims, and Counts One and Two are dismissed.

    2.    *Counts Three & Four (Disability Discrimination)*

Plaintiff's third and fourth claims allege disability discrimination under the ADA and ORS § 659A.112. The standard for establishing a prima facie case of disability discrimination is identical under Oregon law and federal law, thus these claims are considered together. *Snead v. Metro. Property & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001); *see* Or. Rev. Stat. § 659A.139 (providing that state disability discrimination statute should be construed "to the extent possible in a manner that is consistent with any similar provisions of the [ADA]"). To state a claim for disability discrimination, a plaintiff must show that: (1) they are a qualified individual with a disability; (2) they suffered an adverse employment action; and

(3) there is a causal connection between the adverse employment action and the disability. *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d 1179 (D. Or. 2016).

        a.       Existence of a Disability

Under the ADA, a person with a disability includes "an individual who is 'regarded as having' an impairment." *Equal Emp. Opportunity Comm'n v. BNSF Railway Co.*, 902 F.3d 916, 922 (9th Cir. 2018) (quoting 42 U.S.C. § 12102(1)(C)). An individual is "'regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* (quoting 42 U.S.C. § 12102(3)(A)). "Transitory" impairments, or impairments "with an actual or expected duration of 6 months or less," are not disabilities under the ADA. 42 U.S.C. § 12102(3)(B).

Defendants argue that plaintiff has not alleged a disability, and that any claim based on a perceived disability is time barred because the only allegation supporting the inference of a perceived disability is Blanchard's statement from March 2019. However, the complaint alleges that plaintiff's union representative filed an internal complaint alleging that DCJ had demonstrated a pattern of discrimination against plaintiff on the basis of its perception that plaintiff had a mental illness. The allegation that DCJ had demonstrated a *pattern* of discrimination necessarily implies that DCJ continued to perceive plaintiff to be disabled even after Blanchard's statement in 2018. Although the specific date that the internal complaint was filed is not provided in the complaint, plaintiff asserted at oral argument that it was filed in December of 2021. This is sufficient to allege a perceived disability within the applicable statutory timeframe for plaintiff's claims.

        b.       Causation

Defendants also argue that plaintiff has not plausibly alleged a causal connection between any perceived disability and adverse employment actions. Defendants maintain that the only factual allegation suggesting a perceived disability occurred in March of 2019. As already discussed, the complaint's allegations imply that DCJ perceived plaintiff to be disabled through at least December of 2021

when the union complaint was filed. Defendants also argue that the only timely alleged adverse employment actions are the "unfounded oral reprimands" and the "letter of expectations" that plaintiff alleges occurred after December 2021. 2d. Compl. ¶ 41. However, defendants' refusal to reinstate plaintiff to her probation/parole officer position in September of 2021 following her third fitness evaluation also plausibly alleges an adverse employment action. Adverse employment actions include "termination, demotion, suspension, removal of job responsibilities, imposition of more burdensome work activities, overtime, reduction in salary or benefits, and substantial interference with work facilities that are key to job performance." *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002).

Plaintiff alleges that, as a result of her removal from the probation/parole officer position, she experienced a change in job responsibilities, a reduction in salary, and a demotion. Thus, the allegations imply that when DCJ refused to reinstate plaintiff to the probation/parole officer position in September of 2021, plaintiff experienced an adverse employment action because the DCJ perceived plaintiff to be disabled. DCJ continued to refuse to reinstate plaintiff until December of 2021. As such, plaintiff has plausibly alleged facts supporting the inference of a causal connection between a perceived disability and adverse employment actions, and Counts Three and Four will not be dismissed.

    3.    *Counts Five & Six (Disability Retaliation)*

Plaintiff also alleges retaliation for opposing disability discrimination under federal and state law, and, again, these claims are considered together. A prima facie case for retaliation under the ADA requires that the plaintiff show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Brooks*, 229 F.3d at 928.

    a.    Protected Activity

Defendants argue that plaintiff has not adequately alleged that she engaged in protected activity. Defendants contend that plaintiff never asked for accommodations and routinely denied being disabled, thus her actions could not be construed as pursuing her rights under the ADA. Reporting disability discrimination is protected activity. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). The complaint alleges that plaintiff's union, on her behalf, filed an internal

complaint alleging discrimination against plaintiff on the basis of a perceived disability. Plaintiff alleges that the internal complaint was submitted in December of 2021. Therefore, plaintiff has adequately alleged that she engaged in timely protected activity.

        b.        Causation

Defendants also argue that plaintiff has not adequately alleged a causal relationship between plaintiff's protected activity and any adverse employment actions. Plaintiff argues that, after her union representative filed the internal complaint, she was subjected to numerous fitness evaluations, DCJ refused to reinstate her to her probation/parole officer position, and she was subjected to a hostile work environment. Part of this argument is inconsistent with the timeframe provided in the complaint. Plaintiff alleged at oral argument that the union complaint was filed in December of 2021. At that time, plaintiff was not subjected to further fitness evaluations.

As for DCJ's refusal to reinstate her, the complaint alleges only that she was reinstated in "[a]t the end of December 2021." 2d Compl. ¶ 39. Similarly, the allegations plaintiff relies on in relation to her hostile work environment argument state only that the conduct occurred in "December 2021." *Id.* ¶ 41. Without knowing when the union complaint was filed in relation to plaintiff's reinstatement or the conduct allegedly constituting a hostile work environment, the Court cannot adequately assess the causal connection between plaintiff's alleged protected activity and any alleged adverse employment actions. Thus, plaintiff has not adequately pled the causation element of her claims, and Counts Five and Six of the complaint are dismissed.

        4.        *Count Seven (§ 1983)*

Finally, plaintiff alleges that she was retaliated against, in violation of the First Amendment, for reporting a sexually hostile work environment and disability discrimination through defendants' creation of a hostile work environment. To establish a First Amendment retaliation claim in this context, the plaintiff must show (1) that she spoke on a matter of public concern; (2) that she spoke as a private citizen, not as a public employee, and (3) that her protected speech was a substantial or motivating factor for an adverse employment action against her by her public employer. *Shepherd v. City of Portland*,

16

829 F. Supp. 2d 940, 966 (2011).  Defendants concede that plaintiff's speech was in her capacity as a private citizen.

        a.        Matters of Public Concern

Speech involving matters of public concern include speech related to "any matter of political, social or other concern to the community." *Id.*  "[P]roceedings before a judicial or administrative body constitute a matter of public concern if they bring to light potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials." *Id.*  "[S]peech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of government agencies, is generally not of public concern." *Id.*  Defendants concede that plaintiff's report of Novinger's alleged criminal conduct and plaintiff's July 2020 BOLI complaint constitute speech on matters of public concern.  However, they argue that plaintiff has not adequately alleged that all her speech involved matters of public concern.  Because defendants concede that plaintiff has alleged at least some speech that involved matters of public concern, the inquiry ends.  Plaintiff has adequately alleged this element of her retaliation claim.

        b.        Adverse Employment Action

Defendants argue that plaintiff has not alleged facts showing that any adverse employment action was taken against her.  Defendants argue that most of plaintiff's alleged adverse employment actions occurred outside of the applicable statutory time frames, such as her initial alleged demotion in 2019.  Yet defendants acknowledge that the allegation that, since December 2021, plaintiff has experienced "exclusion and isolation, unfounded oral reprimands, a letter of expectations, failure to resolve complaints, criticism regarding her non-verbal mannerisms, and negative gossip," 2d Compl. ¶ 41, could constitute adverse actions.

Nevertheless, defendants contend that this allegation is insufficient because plaintiff has not alleged any conduct by Preuitt, Blanchard, Scroggin, or Valetski after March 2019.  The complaint does allege that the aforementioned experiences resulted from "the behavior of Preuitt, Scroggin, Blanchard, Valetski, Graves, and/or LaJoie." *Id.*  However, it provides no allegations that specify what conduct is

attributable to each individual defendant. For example, the complaint does not specify who gave plaintiff "unfounded oral reprimands," or who sent the "letter of expectations." *Id.* The only allegation of conduct specifically attributed to an individual defendant after March of 2019 are the internal messages sent by Graves and LaJoie after plaintiff resigned from her position as deputy public guardian to return to the probation/parole officer position. These messages, standing alone, are insufficient to plausibly constitute an adverse employment action.

Even taking the allegation that the individual defendants' behavior created a hostile work environment as true, the absence of allegations specifically attributing alleged adverse employment actions to each individual defendant's conduct renders the allegation conclusory. The complaint does not adequately plead specific facts sufficient to enable defendants to defend themselves, and Count Seven is dismissed.

## CONCLUSION

Accordingly, defendants' Motion to Dismiss, ECF [19], is GRANTED in part and DENIED in part. Counts One, Two, Five, Six, and Seven are DISMISSED without prejudice and with leave to amend. Plaintiff may file a third amended complaint within fourteen days of this Opinion & Order, if she believes she can remedy the deficiencies outlined in this Opinion and Order.

IT IS SO ORDERED.

DATED this 6th day of August, 2024.

_____
Adrienne Nelson
United States District Judge